UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DALLY PROPERTIES, LLC,

    Plaintiff,

v.

TRUCK INSURANCE EXCHANGE, a foreign corporation; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a foreign corporation; and LEXINGTON INSURANCE COMPANY, a foreign corporation,

    Defendants.

Case No. C05-0254L

ORDER ON LEXINGTON'S MOTION TO STRIKE EXPERT TESTIMONY OF JOE BOZICK AND MARSHALL PIHL

    This matter comes before the Court on "Lexington Insurance Company's Motion to Strike Expert Testimony of Joe Bozick and Marshall Pihl" (Dkt. # 86). Lexington Insurance Company ("Lexington") seeks to exclude the testimony of both of these experts, from the Truck Insurance Exchange ("Truck") and Dally Properties, LLC ("Dally"), respectively, on the issues of the rate of wood decay and the occurrence of the property damage at the St. Theodore Apartments ("the building") because the reports containing the testimony were served after the Court's deadline for disclosure of expert reports (and did not fall into a recognized exception) and because they employed methodology to arrive at their conclusions that should be excluded. For the following reasons, Lexington's motion is denied in part and granted in part.

ORDER ON LEXINGTON'S MOTION TO
STRIKE EXPERT TESTIMONY OF JOE
BOZICK AND MARSHALL PIHL - 1

## I. Background

Dally, the owner of the building, is embroiled in a litigious insurance dispute with Truck, Lexington and Travelers Property Casualty Company of America ("Travelers"). The details of this dispute are largely irrelevant to the instant motion and will be recited in greater detail in another order. In short, a central point of disagreement amongst the parties is the timing of the occurrence of certain damage to the building (which may or may not be covered by the policies). The damage relevant to the instant motion is the decay of the wood in the building. This is, by all accounts, difficult to measure, and by some accounts impossible. Each party has hired at least one expert to provide an opinion on the matter. By a stipulated motion of the parties, the Court set August 1, 2005 as the deadline for disclosure of expert witnesses and their reports (Dkt. # 27).

Joe Bozick is an engineer at Pacific Engineering, which was hired by Truck to examine the cause and extent of the damage at the building. His first report, which did not address the issue of the timing of the damage, was submitted to the other parties in accordance with the deadline on August 1, 2005. Truck asked Bozick to address this timing issue after reading reports from Lexington and Travelers. His second report was submitted on August 31, 2005

Marshall Pihl is an engineer at Olympic Associates, which was hired by Dally. His first report, which also did not address timing, was provided to all the parties on July 28, 2005. Dally distributed Pihl's second report, which did address timing, on August 31, 2005.

## II. Discussion

Lexington argues that neither report should be submitted. First, Lexington argues that the reports fall neither within the rebuttal nor supplemental report exception—which allows the submission of expert opinions after the deadline—and therefore should be dismissed under Rule 37. Fed. R. Civ. P. 39(c)(1) ("A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence . . . any witness or information not so disclosed."). Second, Lexington argues that the

ORDER ON LEXINGTON'S MOTION TO
STRIKE EXPERT TESTIMONY OF JOE
BOZICK AND MARSHALL PIHL - 2

method and conclusions of the second expert reports are unreliable and should be excluded under Rule 702 of the Federal Rules of Evidence and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u> 509 U.S. 579, 589 (1993).[1]  These issues are discussed in turn.

**A.  Deadline**

Dally and Truck argue that their experts' reports were properly submitted after the deadline in accordance with Rule 26(a)(2)(C).  Fed. R. Civ. P. 26(a)(2)(C) ("[I]f the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), [the disclosures shall be made] within 30 days after the disclosure made by the other party.").  Specifically, neither of them included information about timing issues in their original reports, but the experts for Travelers and Lexington did.  Therefore, the reports rebutted the opinions of other experts.

*1.  Bozick's Report*

In his first report, Bozick submitted a number of documents assessing the extent of the damage to the building.  This included the "Preliminary Water Intrusion Investigation," "Supplemental Water Intrusion Investigation," "Supplemental Water Intrusion Investigation II," and "Supplemental Water Intrusion Investigation III."  Benami Decl. Ex. 2–5.  These reports detailed the degree of damage to the building and identified many flaws in the construction that

---

[1] In the process, Lexington exceeded the page limits set forth by the Court.  Lexington submitted a single, twelve-page motion to exclude the testimony of Bozick and Pihl.  Both Truck and Dally submitted twelve-page responses.  Lexington subsequently submitted one twelve-page reply to Dally's response regarding Pihl's testimony (Lexington at times would refer to Pihl as "Bozick" in this reply, and several of the headings on page six refer to Bozick, but the entire reply is, in fact, about Pihl).  Lexington then submitted a separate twelve-page reply to Truck's response, which dedicated six pages to the issue of Bozick's report (the remainder dealt with Lexington's motion for summary judgment).  At least one of these replies should have been deemed a violation of the page-limit rules.  Local Rule CR7(e)(4).  The parties are urged to comply with page limitations and also to bring to the Court's attention possible violations of the page-limit rules.

ORDER ON LEXINGTON'S MOTION TO
STRIKE EXPERT TESTIMONY OF JOE
BOZICK AND MARSHALL PIHL - 3

1 likely contributed to the damage.  Perhaps because the conclusion that the decay began
2 immediately was a necessary corollary to his observation that the damage was likely caused by
3 construction defects, Bozick did not opine on when the damage occurred.  Alternatively, it is
4 possible that Bozick was originally tasked with a somewhat myopic approach to the
5 litigation—concerning only the extent and cause of the damage.

6 Regardless, when Truck received the reports from experts hired by Travelers and
7 Lexington, which asserted that it was impossible to reliably determine whether damage occurred
8 during Travelers and Lexington's coverage period, Truck asked Bozick to describe the rate of
9 decay in a second report.  The second report, "Decay Timeline — Structural Assemblies," was
10 filed August 31, 2005.

11 Truck's use of the rebuttal report is almost exactly that which is conceived by Rule 26.
12 In it, Bozick rebuts a challenge to the implications from his own report with further conclusions
13 and analysis.  It falls squarely within the Rule 26(a)(2)(C) language.  Fed. R. Civ. P. 26(a)(2)(C)
14 ("intended solely to contradict or rebut evidence on the same subject matter").

15 Importantly, the late submission of the expert report is harmless.  Because Lexington's
16 expert concluded only it was difficult to determine a timeline for decay, Truck did not benefit
17 from "lying in wait."  If Bozick had used his second report to attack Lexington's expert with
18 information previously available to him, then the situation would better resemble that of Keener
19 v. U.S., 181 F.R.D. 639, 641 (D. Mont. 1998).  In that case, the "ambush" effect of the rebuttal
20 report led to its exclusion.  Id.  Moreover, in this case, the rebuttal report was not filed shortly
21 before trial, and the expert was available for deposition after the report's circulation.  Truck
22 neither sought nor received any advantage from delaying Bozick's report.

23 2. *Pihl's Report*

24 Dally argues that Pihl's late-submitted reports are justified both as a supplemental report
25 and as a rebuttal report. First, after it became clear at the August 11, 2005 deposition whether
26 Pihl was supposed to have included his analysis of the timing of the decay in his report, Dally

ORDER ON LEXINGTON'S MOTION TO
STRIKE EXPERT TESTIMONY OF JOE
BOZICK AND MARSHALL PIHL - 4

1  sent a letter to the parties involved indicating that it intended to have Pihl testify as to timing. A
2  graph was included with that letter that showed Pihl's estimate of the rate of decay between the
3  beginning of 2001 to mid-2004. Marchese Decl. Ex. B. Pihl's full rebuttal report, which was
4  distributed to the parties on August 31, 2005, contained this same graph and two pages of
5  explanation. Pihl Decl. Ex. A.

6        Pihl's report also fits squarely within the purpose of rebuttal and supplemental testimony.
7  It became clear at the deposition that this aspect of his research would be called into question,
8  and so Pihl supplemented his report with the graph that he had previously omitted. In order to
9  rebut the Lexington and Traveler expert reports, which contradicted certain assumptions in his
10 supplemental report, Pihl submitted an explanatory rebuttal report. Also, Pihl and counsel for
11 Dally warned the other parties that these additional reports were forthcoming and made Pihl
12 available for additional deposition in order to mitigate any harm of the lateness.

13 **B.  Methodology**

14       Dally and Truck contend that their experts' reports employ reliable methodology
15 adequate to qualify the reports under Rule 702 and Daubert. Rule 702 allows an expert opinion
16 "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of
17 reliable principles and methods, and (3) the witness has applied the principles and methods
18 reliably to the facts of the case." Fed. R. Evid. 702. Daubert clarifies the reliability prong of the
19 rule, explaining that a court should assess reliability by determining whether the approach used
20 can and has been tested, has been subject to peer review, has an identifiable rate of error, and is
21 generally accepted within the community. Id. at 593–94. The opinion emphasized that this
22 inquiry is flexible. Id. at 594. Lexington does not contest that Pihl and Bozick are experts
23 qualified to provide their reports on the damage to the building. Instead, Lexington argues that
24 no one is qualified to provide an opinion on the timing of the decay, because it is impossible.
25 The key question here is whether the approaches employed by each expert to make these
26 estimates can be admitted under Daubert.

ORDER ON LEXINGTON'S MOTION TO
STRIKE EXPERT TESTIMONY OF JOE
BOZICK AND MARSHALL PIHL - 5

*1. Bozick's Report*

Bozick addresses the four <u>Daubert</u> inquiries in his report. Bozick Decl. at 3–6. He identifies numerous data points for his tests, including the date of the building's completion, the types of wood, the paths of the water, the state of the decay upon first inspection and the weather during this period. Bozick employs a linear growth model for mold which, although contested by the other experts, has been proven in a lab and described in a scientific publication. Acknowledging the uncertainty of the enterprise of dating the decay, Bozick's diagrams contain ranges that express an expected rate of error. Finally, Bozick asserts that the rate of decay approach that he employs has been accepted within the expert community, citing the previously mentioned publication.

Bozick's report is admissible under <u>Daubert</u>. The one area of his stipulations that raise the most serious concerns is whether, in fact, there is widespread acceptance in the scientific community of the accuracy of decay estimates dating back more than a year, and whether the linear fungal growth model is accurate. These concerns, however, do not merit exclusion. The other parties will have the opportunity and expert resources of their own at trial to challenge Bozick's methods and conclusions.

*2. Pihl's Report*

Pihl's rebuttal report contains no similar assurances of scientific reliability. Pihl uses June 2004 as his end point and uses the date of the completion of the construction of the building as his start point. The building was in a state of collapse at the end point and was in perfect condition at the start point. He then charted two lines: one representing linear growth and another representing geometric growth (of an unidentified rate). Pihl asserts without support that it is generally accepted within the community that fungal growth is geometric, but included the straight line simply to show what linear growth would look like. Next, Pihl drew a line halfway in between the top and the bottom of the chart, and labeled this line "Substantial Structural Impairment" (SSI), so that it would be clear at what point the two lines reached this

ORDER ON LEXINGTON'S MOTION TO
STRIKE EXPERT TESTIMONY OF JOE
BOZICK AND MARSHALL PIHL - 6

stage of decay.

Importantly, the report includes two caveats that further undermine the value of the graph. First, it declares that the line would only reflect those elements of the building that had reached a state of collapse in June, 2004. Thus, the graph only applies to those elements. It does not explain which elements were in a state of collapse, nor how many. Second, it notes that the SSI line has been arbitrarily placed half way between collapse and perfect condition, but that "the exact relationship between the SSI and Collapse line will vary for each element and system." Pihl Decl. Ex. A.

Notwithstanding the fact that Bozick demonstrated that a rate of decay timeline could be estimated in a sufficiently reliable manner so as to allow its admission, Pihl has failed to show that he employed any reliable methodology to arrive at his conclusions. The apparent lack of meaningful scientific input into Pihl's conclusions regarding the rate of decay requires this Court to exercise its gatekeeping function to exclude this report.

### III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Lexington's motion to exclude expert testimony is DENIED with regard to Truck's expert Joe Bozick and GRANTED with regard to the rebuttal report of Dally's expert Marshall Pihl.

DATED this 9th day of January, 2006.

_____
Robert S. Lasnik
United States District Judge

ORDER ON LEXINGTON'S MOTION TO
STRIKE EXPERT TESTIMONY OF JOE
BOZICK AND MARSHALL PIHL - 7