UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DALLY PROPERTIES, LLC,

    Plaintiff,

v.

TRUCK INSURANCE EXCHANGE, a foreign corporation; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a foreign corporation; and LEXINGTON INSURANCE COMPANY, a foreign corporation,

    Defendants.

Case No. C05-0254L

ORDER ON TRAVELERS' MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on "Defendant Travelers' Motion for Summary Judgment" (Dkt. # 30) and "Defendant Travelers' Second Motion for Summary Judgment" (Dkt. # 90). Travelers Property Casualty Company of America ("Travelers"), Lexington Insurance Company ("Lexington") and Truck Insurance Exchange ("Truck") are being sued by Dally Properties, LLC ("Dally") for breach of insurance contract, bad faith claims handling, Consumer Protection Act Violations and attorney's fees. In these motions for summary judgment, Travelers argues that there was no coverage under their policy and that they handled Dally's

ORDER ON TRAVELERS' MOTIONS
FOR SUMMARY JUDGMENT - 1

1  claims in good faith.

## I. Background

Dally owns the St. Theodore Apartments ("the St. Theodore" or "the building"), a six story, wood-framed, 47-unit apartment building with street-level commercial space. Construction on the building was completed in 2000. In February, 2004, an employee of Con Am Management Corporation ("Con Am"), Dally's property management company, discovered water damage in the building. Dally hired Olympic Associates Company ("Olympic"), an engineering firm, to assess the extent of the damage. Olympic reported extensive damage to the building due to wood decay resulting from water intrusion. The findings of that inquiry are recited in the Hart Declaration.[1]

Dally submitted claims to the three insurance companies that had covered the building at various times. Truck was the current insurer and had insured the building since September, 2001. Travelers was Truck's immediate predecessor, and insured the building from May, 2001 to September, 2001. Lexington was the first to insure the building, and its policy had been for the year between May, 2000 and May, 2001. Each of these insurers hired engineers to inspect the damage, evaluate its cause and determine when it occurred.

Travelers now moves for summary judgment, arguing that there is no evidence that the damage "commenced" during their policy period, that its policy does not cover "collapse," that collapse caused by wind-blown rain is not a covered peril, that Dally's claim is subject to the policy's "deterioration" exclusion, and that there is no evidence showing that they acted in bad faith in handling Dally's claim.

## II. Discussion

This order regarding Travelers' summary judgment motion requires an assessment of the facts available to the Court regarding the terms and dates of Travelers' coverage of the St.

---

[1] Further findings from assessments performed by Olympic are contained in the expert report and declaration by Marshall Pihl.

1  Theodore and the cause and timing of the damage to the building.  The relevant facts and legal
2  analysis are discussed in separate sections.  For each issue, summary judgment is appropriate if
3  "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the
4  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving
5  party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For the purpose of this
6  motion, the Court will construe all facts in favor of Dally.  See Anderson v. Liberty Lobby, Inc.,
7  477 U.S. 242, 255 (1986).  If Travelers demonstrates the absence of a genuine issue of fact as to
8  one or more of the essential elements of a claim or defense, Dally must make an affirmative
9  showing on all matters placed at issue by the motion as to which Dally has the burden of proof
10 at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**A.  Damage "Commencing" During Travelers' Policy Period**

To show that the damage did not "commence" during its policy period, Travelers can argue either that it began before its coverage, or that it did not begin until after its coverage.  See Ellis Court Apts. Ltd. P'ship v. State Farm Fire & Cas. Co., 117 Wash.App. 807, 814 (2003) (determining that "commences" means "begins," not "manifests").  Travelers first argues that no evidence has been presented to show that any decay occurred during their policy period.  On August 31, Truck's wood decay expert Joe Bozick submitted a rebuttal report that concluded that decay could have begun as early as Lexington's policy period.  Unlike Lexington, which saw Bozick's rebuttal report and argued for its exclusion, Travelers submitted its motion for summary judgment prior to Truck's entry of Bozick's testimony.  The Court has declined to exclude Bozick's rebuttal report, and so cannot find for Travelers on this argument while resolving all outstanding factual disputes in favor of Dally.

In its reply brief, Travelers takes the opposite approach, and argues that Bozick's rebuttal report demonstrates that the damage, as defined by Dally, commenced prior to Travelers' policy period and merely *continued* or *occurred* during Travelers' policy period.  Travelers is correct that using only Bozick's factual conclusions, it appears that the damage did not "commence"

1  within the meaning of the term as used in the insurance policy during Travelers' policy period.
2  This approach, however, ignores the practical reality that the resolution of the disputed factual
3  issues frequently involves a compromise between competing experts' conclusions.  Thus,
4  Bozick's conclusions that the damage began *before* Travelers' policy period, in concert with the
5  conclusion of Kingsley Drake, Travelers' expert on wood decay, that the decay began *after*
6  Travelers' policy period, could easily yield the factual conclusion that the decay began exactly
7  *during* Travelers' policy period.

8  Due to these outstanding factual issues, which could be resolved in favor of Dally, the
9  Court cannot grant summary judgment on this issue at this stage in the proceedings.

10 **B.     Damaging Rising to the Level of "Collapse"**

11 In its first motion for summary judgment, Travelers argues that "there is no evidence
12 supporting a conclusion that decay was so advanced that it amounted to a 'collapse.'"
13 Memorandum at 9.  In its second motion for summary judgment, Travelers notes that its policy
14 excludes "collapse" from coverage.  Travelers' Second Motion for Summary Judgment at 3–6;
15 see also Adams Decl. Ex. A at 16.  Because the extent and timing of the damage is an open
16 factual question, *supra*, this order addresses the arguments contained in the second motion.

17 *1.     No Coverage for "Collapse" and "Imminent Danger of Collapse"*

18 Each party's approach to the question of "collapse" coverage in the second summary
19 judgment motion marks the most significant change from the round of briefing on Travelers'
20 first motion for summary judgment.  Travelers' now forcefully argues that even (indeed,
21 especially) conceding that Dally seeks coverage for (a) "collapse" or (b) "substantial impairment
22 of structural integrity" that amounted to "collapse conditions," that occurred during Travelers'
23 policy period and then manifested in February, 2004, there is no coverage in the Travelers'
24 policy, because the policy contains an explicit exclusion for collapse conditions.

25 The provision in question reads as follows:

26 D.     Exclusions

ORDER ON TRAVELERS' MOTIONS
FOR SUMMARY JUDGMENT - 4

> 1. The Company will not pay for loss or damage caused directly or indirectly by any of the following. . . .
>
> . . .
>
> j. Collapse of Buildings
>
> . . .
>
> (3) As respects buildings in a state of imminent collapse, the Company will not pay for loss or damage unless the state of imminent collapse first manifests itself during the policy period . . . .[2]

Adams Decl. Ex. A. at 14 & 16.

Travelers argues that this provision speaks for itself, and Dally agrees with this assessment. Response at 3 ("After reviewing the extensive discovery completed in this case and applying those facts to Travelers' 'collapse' provision, Dally has determined that under Travelers' policy, coverage does not apply for 'substantial impairment of structure integrity' and 'imminent danger of collapse' . . . ."). The Court accepts the parties' interpretation.

   2. *Coverage for Collapse Caused by Weather Conditions*

Next, Travelers argues that their policy also contains an explicit exclusion for "weather conditions." The provision, which contains a disputed qualifier, reads as follows:

> D. Exclusions
>
> . . .
>
> 3. The Company will not pay for loss or damage caused by or resulting from any of the following:
>
> a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in D.1 above to produce the loss or damage.

Adams Decl. Ex. A. at 14 & 16. The straightforward reading of this provision is as follows: The policy contains an exclusion for weather conditions, but this exclusion is quite limited, to wit:

---

[2] A second qualifier is not included here because the parties agree that the condition did not manifest during the policy period, and therefore the analysis need not continue on this point.

ORDER ON TRAVELERS' MOTIONS
FOR SUMMARY JUDGMENT - 5

1 the exclusion for loss due to weather conditions applies only when the weather conditions are
2 associated with one of the provisions ("cause[s] or event[s]") listed in D.1.  Section D.1
3 includes: 1.a) Earth Movement; 1.b) Flood; 1.c) Governmental Action; 1.d) Nuclear Hazard; 1.e)
4 War and Military Action; 1.f) Computer Virus; 1.g) Programming Errors or Omissions; 1.h)
5 Ordinance or Law; 1.i) Off Premises Utility Services; and, 1.j) *Collapse of Buildings*.

6       The operation of this provision is quite clear.  The insurer seeks to prevent an insured
7 from attempting to bootstrap coverage of one of the D.1 exclusions by arguing that an all-risk
8 policy includes weather conditions.  The policy does so by excluding weather conditions to the
9 extent that they cause or contribute to (or, in this Court's construction, are associated with) one
10 of the explicit D.1 exclusions.  The paradigmatic example of the purpose of the D.3.a weather
11 conditions exclusion is when the insured argues that an all-risk policy covers the weather
12 condition of heavy rain, and the damage therefrom, and so loss that is caused by flood-like
13 conditions should be covered, despite an explicit exclusion for flood.[3]  See, e.g., Kish v. The Ins.
14 Co. of N. Am., 125 Wn.2d 164 (1991).  The language in the instant policy would prevent such
15 an argument.  It would also prevent an argument that rain is covered which causes a landslide
16 (which is listed as a type of "earth movement").  And, it would seem, it clearly would prevent an
17 argument that rain is covered which caused collapse.

18       Dally disputes this approach with an unusual interpretation of the provisions.  In the
19 previous section of this order, the Court wrote that Travelers argued that there *is collapse*, which
20 is *not covered*, because it is *excluded*.  Dally translates this as such: "[Travelers] unequivocally
21 committed itself to the position that there is no covered collapse."  In other words, "collapse is
22 not covered" is abbreviated in Dally's formulation to "there is no covered collapse."  Dally then

---

24    [3] Significant amounts of interesting litigation on this topic will likely arise out of New
25 Orleans, as litigants flesh out whether policy holders with coverage for hurricanes but not
floods, or vice versa, should be compensated for the dramatic losses occasioned by the water
26 damage from several canal breaches, torrential rain and storm surges associated with Hurricane
Katrina.

ORDER ON TRAVELERS' MOTIONS
FOR SUMMARY JUDGMENT - 6

says because there is no "covered collapse," then the weather conditions exclusion does not apply, because it has not "contribute[d] in any way with a cause or event excluded in D.1." If there is no D.1 incident, the weather conditions exclusion could not have contributed to it to cause the loss.

This argument is patently without merit. This interpretation renders meaningless the weather conditions exclusion. Using this same approach, Dally could argue for flood coverage like this: "Rain gathered in large bodies of water that washed over and damaged the building. Travelers argues that there is no covered flood damage. The policy's weather exclusion applies only when it contributes to a D.1 incident. Because Travelers has argued that there was no covered flood damage under D.1, then the weather conditions exclusion does not apply to the loss sustained by this rain which gathered into large bodies of water."

The Court will not interpret a contract provision in a way to render it meaningless. Thus, the Court accepts Travelers' interpretation of this exclusion and concludes that the weather conditions exclusion applies to the rain that caused the decay to the wood in the St. Theodore.

*3.     Wind-blown Rain as a Distinct Peril*

Finally, Travelers argues that wind-driven rain is not a peril distinct from the excluded weather conditions. Because the alleged wind-driven rain caused or contributed to a collapse or near-collapse conditions, it is excluded under D.3.a.

Dally leans heavily for its argument on the favorable holding in the Sunbreaker case. Sunbreaker Condo. Ass'n v. The Travelers Ins. Co., 79 Wn.App. 368 (1995). In that case, the Court examined a virtually identical policy and determined that, considered together, the provision that excludes weather conditions to the extent they contribute to an excluded event (D.1 in the instant policy, B.1 in the Sunbreaker policy) and the provision that includes certain weather conditions (e.g. "windstorm or hail") to the extent that they contribute to dry rot damage (D.2 in the instant policy, B.2 in the Sunbreaker policy), act together to evince an intent to "characterize dry rot and wind-driven rain as distinct perils." Id. at 377. That court then

ORDER ON TRAVELERS' MOTIONS
FOR SUMMARY JUDGMENT - 7

1 concludes that "[w]ind-driven rain is a covered peril because it is not excluded (the policy only
2 excludes weather conditions that contribute to a loss excluded in paragraph B.1.)." Id. at 378.

3       Although this Court accepts the state court's construction of this largely identical
4 contract, the variant factual background merits further analysis.[4] In Sunbreaker, the alleged peril
5 was wind-driven rain. In the instant case, the peril again appears to have been wind-driven rain,
6 but Dally has gone to great lengths to frame the loss as "collapse" instead of dry rot. The
7 Sunbreaker opinion makes clear that the wind-driven rain is not excluded because it was not
8 alleged to have contributed to an excluded peril. Id. ("[T]he policy only excludes weather
9 conditions that contribute to a loss excluded in paragraph B.1."). That is not so in the instant
10 case if the Court accepts "collapse" as the claimed loss, because collapse is an excluded loss
11 under this contract's equivalent of B.1, which is D.1. And, if the loss complained of is dry rot,
12 only certain causes thereof will be covered. Nonetheless, the analysis must end, as it did in
13 Sunbreaker, with the enumeration of several perils, most of which are excluded, but one which
14 is not: collapse (excluded), weather conditions causing collapse (excluded), dry rot (excluded),
15 wind-driven rain not causing collapse (not excluded).

16       Pursuant to the analysis in Part C.2 of Sunbreaker, this Court must leave this final issue
17 open to a determination by a finder of fact:

---

[4] It is not without some hesitation that this Court employs Travelers' policy as construed by the Sunbreaker opinion, which appears to have created a significant roadblock to a legitimate summary judgment motion. The loss in that case was clearly occasioned by dry rot. Sunbreaker, 79 Wn.App. at 371. The contract clearly stated that dry rot damage was excluded unless it was caused by a specific set of events, none of which was found. Id. at 372. By analyzing that provision and another provision that excluded coverage of certain weather conditions, the Sunbreaker opinion divined an additional peril which must be included because the all-risk policy does not contain an explicit exclusion. The decision should have rested narrowly on the proposition that Sunbreaker was in a position to show that the dry rot was caused by "windstorm or hail," which were specified causes of loss that were excluded from the dry rot exclusion. Nonetheless, it cannot be denied that the opinion rested on the more broad proposition that under the terms of Travelers' policy, where there is wind-driven rain, there is a non-excluded peril. Id. at 377–78.

ORDER ON TRAVELERS' MOTIONS
FOR SUMMARY JUDGMENT - 8

> Although the parties do no dispute the sequence of events, a reasonable juror could conclude that defective design, defective materials, repeated seepage or leakage, and/or fungus efficiently caused Sunbreaker's loss. If one of these excluded peril efficiently caused the loss, the insurer is not liable. Proximate cause is an issue of material fact precluding summary judgment.

Id. at 380 (citations omitted). Therefore, this Court will not grant summary judgment on this issue.

**C.    Bad Faith and Consumer Protection Act Violation Claims**

Dally's allegations against Travelers for tortious bad faith handling of claims and violations of the Washington Consumer Protection Act are largely similar to the allegations against Lexington. Dally explains at great length that insurers are required to treat insureds in good faith, disclose benefits, and investigate claims, all notwithstanding the eventual disposition of the claim. Response at 8–12. Despite this lengthy discourse on the extensive obligations of an insurance company, Dally's only allegation against Travelers is that Travelers relied on Dally's scope of investigation, without paying for the cost of its preparation, when Travelers had its own experts conduct an assessment of the damage.

Travelers presents evidence that it conducted a thorough investigation and arrived at its decision to decline coverage by making a reasonable interpretation of its policy. Travelers employed Michael Nylander, a local engineer, to prepare a report on the cause and extent of the damage at the St. Theodore. Nylander prepared an extensive report on his conversations with individuals knowledgeable about the building and his observations. Artiss Decl. (for Lexington's Motion for Summary Judgment) Ex. D. This report identified faulty construction as the primary cause of the damage. The report was filed with Travelers on October 18, 2004. Travelers sent a letter to Con Am declining coverage on February 21, 2005. The letter explains the reasons for the declination of coverage with great detail. Adams Decl Ex. G.

Dally offers no support for its argument that it is a violation of good faith claims handling to for an insurer to use its own experts to assess loss using a scope of investigation prepared by the insured. Dally has failed to make an affirmative showing that Travelers acted in other than

ORDER ON TRAVELERS' MOTIONS
FOR SUMMARY JUDGMENT - 9

good faith in its handling Dally's claim.

### III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Travelers' first motion for summary judgment (Dkt. # 30) is DENIED as to Dally's breach of contract claim and GRANTED as to Dally's bad faith claims handling and Washington Consumer Protection Act claims. IT IS FURTHER ORDERED that Travelers' second motion for summary judgment (Dkt. # 90) is DENIED.

DATED this 5th day of April, 2006.

_____
Robert S. Lasnik
United States District Judge

ORDER ON TRAVELERS' MOTIONS
FOR SUMMARY JUDGMENT - 10

-10-