UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DALLY PROPERTIES, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>TRUCK INSURANCE EXCHANGE, a foreign corporation; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a foreign corporation; and LEXINGTON INSURANCE COMPANY, a foreign corporation,<br><br>        Defendants. | Case No. C05-0254L<br><br>ORDER ON TRUCK'S MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on "Defendant Truck's Motion for Summary Judgment" (Dkt. # 36) and "Defendant Truck's Motion for Summary Judgment" (Dkt. # 48). Truck Insurance Exchange ("Truck"), Lexington Insurance Company ("Lexington") and Travelers Property Casualty Company of America ("Travelers") are being sued by Dally Properties, LLC ("Dally") for breach of insurance contract, bad faith claims handling, Consumer Protection Act violations and attorney's fees. Truck moved for summary judgment on the all of

the claims.

## I. Background

Dally owns the St. Theodore Apartments ("the St. Theodore" or "the building"), a six story, wood-framed, 47-unit apartment building with street-level commercial space. Construction on the building was completed in 2000. In February, 2004, an employee of Con Am Management Corporation ("Con Am"), Dally's property management company, discovered water damage in the building. Dally hired Olympic Associates Company ("Olympic"), an engineering firm, to assess the extent of the damage. On February 19, Dally submitted its initial claim for loss to Truck. Initially, the agent in charge for Truck was Al Anderson.[1]

On February 25, Truck hired Pacific Engineering Technologies ("Pacific") as its expert to assess the damage, instructing the firm to focus on the extent to which parts of the property were in a state of collapse or had sustained substantial impairment of structural integrity. In e-mail communications on February 26 between Al Anderson and Beth Kendall, a Truck claims manager, Anderson states that his initial impression was that the damage was "likely due to insadequate [sic] flashing." Bissell Decl. Ex. K. That e-mail exchange also explains that a new Truck agent, Judy Benami, was to take over the claim processing duties.

On March 2, Dally, which had already engaged Stafford Frey Cooper to manage its claim, sent a letter through counsel to Truck explaining that it did not believe the inspection should be limited to the issue of collapse, and instead should include "damage caused by wind-driven rain," and cited Washington case law in support of its position. Bissell Decl. Ex. H. The letter further noted that if Truck did not have its inspectors conduct a more thorough investigation, Dally planned to instruct Olympic to do so.

---

[1] Truck is affiliated with Farmers Insurance, and the difference between the companies is not always clear. For example, a letter from Al Anderson at the Truck Insurance Exchange was written on Farmers Insurance letterhead. Bissell Decl. Ex. F. The distinction between the companies is not at issue in this case, however, and therefore any actions and/or employees or Truck or Farmers will be identified simply as the actions and/or employees of Truck.

ORDER ON TRUCK'S MOTIONS FOR
SUMMARY JUDGMENT - 2

Pacific inspected the building on March 3 and submitted their findings to Benami on March 16.  Benami Decl. Ex. 2.  The report indicated that the investigators had examined unit decks 210, 310, 409, 410, 509 and 510.  The report concluded that the "water intrusion has occurred due to defective/faulty installation of the exterior weather barrier situated beneath the vinyl siding.  Water is penetrating the weather barrier where the vinyl siding is improperly/inadequately terminated and/or flashed at the decks in apartment unit stacks '_09' and '_10'."  The detailed report, in essence, confirmed Anderson's initial impression that faulty flashing had led to the water intrusion and damage.

Benami visited the site on March 29, 2004, and there was subsequent confusion between Dally and Truck as to whether Truck was going to sponsor a further inquiry into damage related to Dally's initial claim.  Dally soon became frustrated with apparent delays from Truck, such as one letter from around this time that simply said that Mr. Lether was out of town, and that no further inquiry had been authorized.  Bissell Decl. Ex. S.  Truck then instructed Olympic, without payment from Truck, to create a scope of investigation report that described all the areas that were damaged.  Using this scope of investigation report, Truck had Pacific conduct several more investigations over the course of the summer.  Pacific generated two additional reports, one on July 7 and another on September 14.  Finally, on November 1, they issued their letter to Dally declining coverage on their claim.  The letter concluded:

> Truck has concluded that the efficient proximate cause of this loss is excluded under the policy.  As the above excerpts indicate, the water intrusion damage and resulting decay at the subject property was the result of defective construction and/or design.  These defects allowed water to enter certain areas of framing.  In turn, the presence of the water resulted in decay to the framing members.  Because construction and design defects, as well as fungus, decay, and hidden defects are all specifically excluded, there is no coverage for the resulting damages.

Benami Decl. Ex. 6. at 9.  The letter went on to discuss the issue of collapse and conclude that the cause of the collapse was not included in the policy coverage.

## II. Discussion

Summary judgment is appropriate if "the pleadings, depositions, answers to

ORDER ON TRUCK'S MOTIONS FOR
SUMMARY JUDGMENT - 3

1  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
2  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter
3  of law." Fed. R. Civ. P. 56(c).  For the purpose of this motion, the Court will construe all facts
4  in favor of Dally.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If Truck
5  demonstrates the absence of a genuine issue of fact as to one or more of the essential elements of
6  a claim or defense, the Dally must make an affirmative showing on all matters placed at issue by
7  the motion as to which the Dally has the burden of proof at trial.  See Celotex Corp. v. Catrett,
8  477 U.S. 317, 323 (1986).

**A.   Bad Faith Claims Handling**

To prove bad faith claims handling, Dally must show that Truck's position on the policy coverage was "unreasonable, frivolous, or unfounded." Am. States Ins. Co. v. Symes of Silverdale, Inc., 150 Wn.2d 462, 469 (2003).  Dally need not show as a matter of law that it was incorrectly denied coverage in order to avoid summary judgment on the question of bad faith. Smith v. Safeco Ins. Co., 150 Wn.2d 478, 486 (2003); Coventry Assocs. v. Am. States Ins. Co., 136 Wn.2d 269, 280 (1998) ("An insurer's duty of good faith is separate from its duty to indemnify if coverage exists.").

Plaintiff's experts do not dispute, and this Court accepts as true, that faulty workmanship played a role in the damage to the St. Theodore.  Bissell Decl. Ex C at 41–42.  Further, it has been shown by Truck, and is undisputed by Dally, that Pacific and several other engineers determined this fact prior to Truck's decision to deny coverage.  Considered in light of Truck's policy provision that excluded from coverage any damage caused by faulty construction, Benami Decl. Ex. 1, this fact allows the Court to conclude that even assuming all disputed facts in Dally's favor, Truck's denial of coverage was neither unreasonable, frivolous, nor unfounded. Summary judgment can be granted on this claim.

**B.   Washington Consumer Protection Act Violation**

The Consumer Protection Act ("CPA") makes unlawful any "unfair or deceptive acts or

ORDER ON TRUCK'S MOTIONS FOR
SUMMARY JUDGMENT - 4

1  practices in the conduct of any trade or commerce." RCW § 19.86.020.  To show a violation of
2  the CPA, "a private citizen must show (1) an unfair or deceptive trade practice, (2) in trade or
3  commerce, (3) that impacts the public interest, (4) which causes injury to the party in his
4  business or property, and (5) which injury is causally linked to the unfair or deceptive act."
5  Indus. Indem. Co. v. Kallevig, 114 Wn.2d 907, 920 (1990) (citing Hangman Ridge Training
6  Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778 (1986)).  An insured can establish an unfair
7  trade practice under the CPA by demonstrating a violation of RCW 48.30.010 based on a
8  violation of Washington Administrative Code ("WAC") regulations regarding unfair claims
9  settlement practices.  Id.; see also WAC 284-30-300 et seq.  Importantly, the "duty to act in
10 good faith . . . may be breached by conduct short of intentional bad faith or fraud."  Indus.
11 Indem. Co., 114 Wn.2d at 916–17.  As such, a court can find that actions that fell short of bad
12 faith also fell short of good faith.

13       Dally alleges that several of Truck's actions constituted potential violations of the WAC.
14 For example, those regulations require that the "insurer shall complete investigation of a claim
15 within thirty days after notification of claim, unless such investigation cannot reasonably be
16 completed within such time."  WAC 284-30-370.  Although Dally's claim was admittedly
17 complicated, and likely would reasonably require more than thirty days, Truck was also required
18 to keep Dally abreast of its decisionmaking process and what further investigation was
19 necessary.  WAC 284-30-380 ("Standards for prompt, fair and equitable settlements applicable
20 to all insurers.").  Dally has alleged facts to suggest violations by Truck of this and other WAC
21 regulations.  Response at 11–16.

22       Viewing the evidence in the light most favorable to Dally, Truck may have violated the
23 CPA by failing to respond promptly and effectively to Dally's claims for damages.  Although it
24 is clear that Dally immediately approached its claim from a litigious standpoint, the facts do not
25 make clear whether Truck's response—including hesitating to conduct further investigation,
26 declining to participate in the drafting of a further scope of investigation after Pacific's initial

ORDER ON TRUCK'S MOTIONS FOR
SUMMARY JUDGMENT - 5

1 investigation, and stating that it could "neither admit nor deny coverage for this loss at this time"
2 more than a month and a half after the initial claim—constituted legitimate responses to the
3 demands of an aggressive claimant or a failure to process the claim in good faith. As such, the
4 Court cannot grant summary judgment on this motion at this time.

**C.     Efficient Proximate Cause**

6       In it second motion for summary judgment, Truck argues that the Court can determine as
7 a matter of law that faulty construction was the "predominant cause" of Dally's loss. The
8 insurance policy states clearly that there is no coverage for loss due to the peril of faulty
9 construction. Benami Decl. Ex. 1 at 9. Therefore, Truck argues, the Court can conclude that
10 there was no breach of contract. As to Dally's claim that wind-driven rain was a distinct peril
11 that contributed to the loss, Truck responds that every expert testified that faulty construction
12 was both the initiating event and the predominant cause of the loss. Moreover, Truck argues,
13 unlike the condo-owner in Sunbreaker, Dally has failed to identify specific storm events that
14 caused the claimed loss. Sunbreaker Condo. Ass'n v. The Travelers Ins. Co., 79 Wn.App. 368
15 (1995)

16      As this Court has noted in a related order, the Sunbreaker court stated clearly that it was
17 not relying on the evidence of specific storm events, but rather on its conclusion that certain
18 policy provisions evinced an intention on the part of the insurer to treat wind-driven rain as a
19 distinct peril. Id. at 377–78. Dally's reliance on this approach, Truck responds, contravenes the
20 "fortuity" rule, which holds that all-risk insurance policies do not cover perils that are "planned,
21 intended, or anticipated." And it is known by all, Truck contends, that a hard rain is going to
22 fall on any structure built in Seattle. Absent a specific storm incident, Dally must be relying on
23 non-fortuitous rain. Two facts undermine Truck's position on fortuity. First, the existence of
24 several provisions addressing, in various ways, the impact and potential impact of rain suggests
25 that rain is not the non-fortuitous event that Truck suggests it is. See Response at 7–8. Rather,
26 rain is a peril that is typically addressed in insurance policies. Second, viewed from the

ORDER ON TRUCK'S MOTIONS FOR
SUMMARY JUDGMENT - 6

perspective of its impact, Dally's alleged wind-driven rain peril appears at least arguably to have been unanticipated.[2] As such, the extent to which the peril is non-fortuitous is a question of fact that cannot be decided at this stage. See Pub. Util. Dist. No. 1 v. Int'l Ins. Co., 124 Wn.2d 789, 805–06 (1994).

Where "two or more distinct perils"—not all of which are covered by the insurance policy—act in concert to cause a loss, the Court applies Washington's efficient proximate cause rule. Id. at 375. That is the case here: Dally and Truck are both correct, respectively, that the loss would not have occurred without the wind-driven rain, and that the loss would not have occurred without the construction defects.[3] Notwithstanding agreement as to the facts of the peril and loss, and even the sequence thereof, the efficient proximate cause rule requires the court to deny summary judgment and allow the jury to determine which peril was the efficient proximate cause of the loss. Id. at 380 ("Proximate cause is an issue of material fact precluding

---

[2] This is not intended to denote agreement with Dally's position that fortuity refers only to the outcome or loss, and not to the peril itself. Dally's effort to view the "known risk" principle exclusively in terms of loss is without merit. See generally Pub. Util. Dist. No. 1 v. Int'l Ins. Co., 124 Wn.2d 789 (1994). The intention here is simply to highlight that fortuity is a fact-driven inquiry.

[3] In its argument that the faulty construction is clearly the "initiating event," Truck contends that any other perspective on the chronology would be illogical: "In order for Plaintiff's position to control, this Court would have to adopt the following sequence of events: wind and rain cause deficiencies in construction, which causes rot and mold and deterioration, which causes decay. This concept is ridiculous." Truck must be reminded of Lord Shaw's eloquent rejoinder, aptly quoted in Sunbreaker, which explains that: "The chain of causation is a handy expression, but the figure is inadequate. Causation is not a chain, but a net. At each point influences, forces, events, precedent and simultaneous, meet; and the radiation from each point extends infinitely. At the point where these various influence meet it is for the judgment as upon a matter of fact to declare which of the causes thus joined at the point of effect was the proximate and which was the remote cause." Sunbreaker, 79 Wn.App. at 378–79 (quoting Leyland Shipping Co. v. Norwich Union Fire Ins. Soc'y, App. Case 350, 369 (H.L. 1918). Although "chain of causation" is a common phrase in Washington state insurance law, parties cannot always rely on its literal implications.

ORDER ON TRUCK'S MOTIONS FOR
SUMMARY JUDGMENT - 7

summary judgment.").

### D.     Truck's Additional Collapse Provision

Truck's introduction of its first and third edition policies demonstrates forcefully that its additional collapse coverage provision contains a typographical error which suggests greater coverage than was intended. Benami Decl. Ex. 11. In its unamended state, the provision reads:

> (1) We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this policy, if the collapse is caused by one or more of the following:
>
>    (a) The "specified cause of loss" or breakage of building glass, all only as insured against in this policy;
>
>    (b) Weight of people or personal property;
>
>    (c) Weight of rain that collects on a roof;
>
>    (d) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, the collapse occurs after construction, remodeling or renovation is complete and is cause in part by a cause of loss listed in D.(1)(a) though d.(1)(d), we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation contributes to the collapse.

Benami Decl. Ex. 1 at 2–3. Truck notes that the Court is required to make a reasonable interpretation of the provision. See, e.g., Weyerhauser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 665-66 (2000). Truck next argues that the only reasonable interpretation of this provision requires the Court to amend the typographical error, changing the final (d) to a (c). This construction would limit the collapse due only to faulty workmanship provision to collapse occurring only during construction, remodeling or renovation.

Dally argues persuasively that the two sentences in this provision can be read in a consistent manner without revision. Dally notes that the sentence in 5.d.(1) provides for coverage "if the collapse is cause by one or more of the following . . . ." Benami Decl. Ex. 1 at 11. The first sentence of 5.d.(1)(d) provides for the collapse coverage resulting from use of defective materials "*during the course of* construction, remodeling or renovation." Benami Decl. Ex. 1 at 12. (emphasis added). The second sentence of 5.d.(1)(d) provides for coverage

ORDER ON TRUCK'S MOTIONS FOR
SUMMARY JUDGMENT - 8

1  "*after* construction, remodeling or renovation *is complete*" if the loss "is caused *in part* by a
2  cause of loss listed in d.(1)(a) through d.(1)(d)." Id. (emphases added).  Dally contends that the
3  operative phrase for the purpose of the consistent interpretation is "in part."  The second
4  sentence expands collapse coverage during the period after the completion of "construction,
5  remodeling or renovation" to situations where the causes listed in 5.d.(1)(a)–(d) contributed to
6  the loss only "in part."

7  Although Truck's explanation for this ambiguous provision is more persuasive than
8  Dally's, Dally's explanation is not unreasonable.  Therefore, the provision must be interpreted as
9  Dally suggests notwithstanding Truck's apparent contrary intent.  See Shotwell v. Transamerica
10 Title Ins. Co., 91 Wn.2d 161, 167 (1978) ("Where a provision of a policy of insurance is capable
11 of two meanings, or is fairly susceptible of two constructions, the meaning and construction
12 most favorable to the insured must be employed, even though the insurer may have intended
13 otherwise.") (citations omitted); see also Weyerhauser, 142 Wn.2d at 665–66 (citations omitted).
14 "This rule applies with added force in the case of exceptions and limitations to the policy's
15 coverage."  Witherspoon v. St. Paul Fire & Marine Ins. Co., 86 Wn.2d 641, 650 (1967).
16 Truck's explanation at best provides evidence of its intent with regard to the provision, but fails
17 to provide insight into Dally's intent when it agreed to the policy.  See Watkins v. Restorative
18 Care Ctr., Inc., 66 Wash.App. 178, 191–92 ("[U]nilateral and subjective beliefs about the impact
19 of a written contract do not constitute evidence of the parties' intent.").  Although the
20 modification proposed by Truck would make the provision make much more sense, the
21 interpretation proposed by Dally is not unreasonable and requires no modification in order to
22 mean what Dally proposes that it means.

23 **E.     Collapse Coverage**

24 Dally and Truck have offered arguments on the question of how "collapse" should be
25 defined for the instant motion.  However, Dally has moved for summary judgment on the
26 question of the definition of the term.  Therefore, the arguments on that issue will be taken up in

ORDER ON TRUCK'S MOTIONS FOR
SUMMARY JUDGMENT - 9

the order on the motion that specifically addresses that issue.

### III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Truck's first motion for summary judgment is DENIED as to Dally's Washington Consumer Protection Act violation claims and GRANTED as to Dally's bad faith claims handling claims. IT IS FURTHER ORDERED that Truck's second motion for summary judgment is DENIED.

DATED this 5th day of April, 2006.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER ON TRUCK'S MOTIONS FOR
SUMMARY JUDGMENT - 10