UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DALLY PROPERTIES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>TRUCK INSURANCE EXCHANGE, a foreign corporation; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a foreign corporation; and LEXINGTON INSURANCE COMPANY, a foreign corporation,<br><br>    Defendants. | Case No.  C05-0254L<br><br>ORDER ON LEXINGTON'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on "Defendant Lexington Insurance Company's Motion for Summary Judgment" (Dkt. # 76). Lexington Insurance Company ("Lexington"), Travelers Property Casualty Company of America ("Travelers") and Truck Insurance Exchange ("Truck") are being sued by Dally Properties, LLC ("Dally") for breach of insurance contract, bad faith claims handling, Consumer Protection Act Violations and attorney's fees. Lexington moved for summary judgment, arguing that the peril was not covered in their policy, that the loss did not occur during their coverage, and that they handled the claim in good faith.

ORDER ON LEXINGTON'S MOTION
FOR SUMMARY JUDGMENT - 1

## I. Background

Dally owns the St. Theodore Apartments ("the St. Theodore" or "the building"), a six story, wood-framed, 47-unit apartment building with street-level commercial space. Construction on the building was completed in 2000. In February, 2004, an employee of Con Am Management Corporation ("Con Am"), Dally's property management company, discovered water damage in the building. Dally hired Olympic Associates Company ("Olympic"), an engineering firm, to assess the extent of the damage. Olympic reported extensive damage to the building due to wood decay resulting from water intrusion. The findings of that inquiry are recited in the Hart Declaration.[1]

Dally submitted claims to the three insurance companies that had covered the building at various times. Truck was the current insurer and had insured the building since September, 2001. Travelers was Truck's immediate predecessor, and insured the building from May, 2001 to September, 2001. Lexington was the first to insure the building, and its policy had been for the year between May, 2000 and May, 2001. Each of these insurers hired engineers to inspect the damage, evaluate its cause and determine when it occurred.

Lexington now submits this motion for summary judgment. Lexington argues that it did not breach the insurance contract for two reasons: (1) there was no damage during its policy period, and (2) regardless of when it occurred, the damage was not covered by Lexington's policy. On the issues of bad faith claims handling and Consumer Protection Act violations, Lexington argues that it did not take a frivolous, unreasonable or untenable position in denying coverage.

## II. Discussion

This order regarding Lexington's summary judgment motion requires an assessment of the facts available to the Court regarding the terms and dates of Lexington's coverage of the St.

---

[1] Further findings from assessments performed by Olympic are contained in the expert report and declaration by Marshall Pihl.

ORDER ON LEXINGTON'S MOTION
FOR SUMMARY JUDGMENT - 2

Theodore and the cause and timing of the damage to the building.  The relevant facts and legal analysis are discussed in separate sections.  For each issue, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  For the purpose of this motion, the Court will construe all facts in favor of Dally.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If Lexington demonstrates the absence of a genuine issue of fact as to one or more of the essential elements of a claim or defense, Dally must make an affirmative showing on all matters placed at issue by the motion as to which Dally has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**A.    Timing of the Damage**

Lexington's insurance policy covered damage to the St. Theodore from May 15, 2000 until May 15, 2001.  Artiss Decl. Ex. C (Lexington's insurance policy for the St. Theodore). The policy is an "all-risk" policy and covers "all risks of physical loss or damage." Id. at 11. The damage alleged in this case was allegedly caused by water, which led to dry rot, which led to decay of the wood and eventually substantial structural impairment ("SSI").  Lexington argues that there is no admissible evidence of damage, i.e. decay of the wood, during Lexington's policy period.

Contemporaneous with the filing of the instant motion, Lexington submitted a motion to exclude the timing testimony of Dally's expert Marshall Pihl and Truck's expert Joe Bozick. This motion has been granted with regard to Pihl but denied with regard to Bozick. Consequently, there is evidence that damage occurred during Lexington's policy period. Bozick's rebuttal report indicates that damage to the wood frame of the St. Theodore happened shortly after its completion, when water began to get into the building through construction flaws.  According to the Bozick rebuttal report, by the end of Lexington's coverage period, more than one of the deck columns that Bozick analyzed may have reached a state of SSI.

ORDER ON LEXINGTON'S MOTION
FOR SUMMARY JUDGMENT - 3

1  Resolving this factual dispute in favor of Dally for the purpose of this motion, the Court
2 cannot grant summary judgment on the question of whether damage occurred to the St.
3 Theodore during Lexington's coverage period.

4 **B.     Cause of Damage**

5  Lexington next argues that their policy does not cover Dally's loss because it contains an
6 exclusion for faulty construction.  In the "Perils Excluded" section, the policy specifies that it
7 "does not cover loss resulting from . . . [e]rrors in design, faulty workmanship or faulty
8 materials, unless a loss not otherwise excluded ensues and then only for the ensuing loss,
9 damage or expense."  Artiss Decl. Ex. C at 12.  Relying on their own expert, as well as those of
10 Truck and Travelers, Lexington asserts that the cause of the damage to the St. Theodore was
11 faulty construction.

12  Dally notes in reply that its expert, Randy Hart, testified in his deposition that but for the
13 rain, there would have been no water damage to the woodwork at the St. Theodore.  Response at
14 8.  Hart did not identify rain as the sole cause in his statements, however; he also conceded, on
15 direct examination by one of Dally's attorneys, that the building had construction defects: "If
16 there's no defect and the water gets there, then technically it can't get in, so you have to have
17 both pieces."  Bissell Decl. Ex C at 41–42.  Further, on cross examination he suggested that only
18 in Death Valley would a building built as the St. Theodore was built not suffer water damage.
19 Id. at 42.

20  Dally argues that because the parties agree that the loss was caused by "two or more
21 distinct perils," not all of which are covered by the insurance policy, this Court must apply the
22 efficient proximate cause rule.  Sunbreaker Condo. Ass'n v. Travelers Ins. Co., 79 Wn.App.
23 368, 375 (1995).  This argument relies on Dally's assumption that Sunbreaker recognizes wind-
24 driven rain as a distinct peril in an all-risk policy.  See id. at 378 ("Because the policy excludes
25 three of these causes, while wind-driven rain is a covered peril, the efficient proximate cause
26 rule applies.").  Because Lexington's policy does not exclude wind-driven rain—indeed, the

ORDER ON LEXINGTON'S MOTION
FOR SUMMARY JUDGMENT - 4

parties agree that it contains no references to weather whatsoever—then, Dally argues, the same rule must apply here.

Dally reads Sunbreaker too broadly. Under Dally's reading, every time a court identifies a peril as conceived of but not excluded in a policy, every future policy must explicitly exclude that peril in order to avoid coverage for a loss that included such an event. The Sunbreaker opinion goes through great pains to explain that it was the co-operation of two provisions, both of which referenced certain types of weather conditions, that led that court to determine that Sunbreaker's policy conceived of wind-driven rain as a distinct and non-excluded peril:

> Taken together, the fungus exclusion exception for "specified causes of loss," and the limited weather conditions exclusion, indicate an intent to characterize dry rot and wind-driven rain as distinct perils. The insurer is liable under both clauses for numerous weather events. The insurer's acceptance of this liability can be synthesized with the fungus exclusion only by characterizing wind-driven rain as contractually distinct from dry rot.

Id. at 1554.

Although the reasoning from Sunbreaker is inapplicable, it appears that Lexington's policy must cover fortuitous weather conditions such as wind-driven rain. See Pub. Util. Dist. No. 1 v. Int'l Ins. Co., 124 Wn.2d 789, 805–06 (1994) (discussing known-risk principle). In an all-risk policy, perils that are not excluded are covered. The Court concludes that because weather conditions are not mentioned in the policy, they were intended to be included. Because the loss was caused by a non-excluded peril (wind-driven rain) and an excluded peril (defective construction), the Court must allow the trier of fact to determine the factual question of which peril was the efficient proximate cause of the loss.

**C.    Bad Faith and Consumer Protection Act Violation Claims**

In addition to the breach of contract claims, Dally alleges that Lexington committed the tort of bad faith due to the manner in which it handled Dally's complaint, and that this action also violated Washington's Consumer Protection Act. RCW 19.86. Lexington argues that although it ultimately denied the claim, it addressed the issue in good faith.

Dally requested that Con Am inform the insurers, including Lexington, of its claim on

ORDER ON LEXINGTON'S MOTION
FOR SUMMARY JUDGMENT - 5

March 25, 2004.  Farrell Decl. ¶ 7.  Lexington hired a local adjuster, Jeffry Hellman, to handle the claim on April 14, 2004.  In the next few days, Hellman got in contact with Con Am and also hired a professional engineering firm, Wiss, Janney, Elstner & Associates ("Wiss Janney"), to evaluate the damage to the St. Theodore.  Engineers from Wiss Janney made three on-site inspections of the building in June and August, 2004, and submitted their final report on December 6, 2004.  Based on Wiss Janney's determination that defective construction caused the loss, and Lexington's conclusion that the defective construction, not rain, was the efficient proximate cause of the loss, Lexington declined coverage on December 12, 2004.

An insurance company commits the tort of bad faith claims handling if its actions were "unreasonable, frivolous or unfounded." Kirk v. Mt. Airy Ins. Co. 134 Wn.2d 558, 560 (1998). Under RCW 48.01.030, an insurance company must "act in good faith in dealing with their insureds." Indus. Indem. Co. v. Kallevig, 114 Wn.2d 907, 916 (1990).  Thus, an insurance company can violate the Washington Consumer Protection Act "by conduct short of intentional bad faith or fraud." Id. at 916–17.

For its argument that Lexington acted in bad faith, Dally relies heavily on a case in which the defendant conceded that it had acted in bad faith by failing to investigate the claim. See Coventry Assocs. v. Am. States Ins. Co., 136 Wn.2d 269 (1998) (dealing with the question of harm).  Lexington, however, does not concede that it acted in bad faith.  To the contrary, Lexington argues that the timeline detailed above—when it was informed of the claim, its engagement of Hellman and Wiss Janney to investigate the claim, and its denial of coverage based on the results of that evaluation almost eight months later—constitutes good faith claim handling.

Dally's principal concern is that it paid its own expert to prepare the initial "Scope of Investigation," which was agreed upon by each of the insurance companies' experts, who then conducted their own individual investigations.  Dally offers no support for the proposition that the insured should not have to pay for the initial scope of investigation; indeed, Lexington cites

ORDER ON LEXINGTON'S MOTION
FOR SUMMARY JUDGMENT - 6

its compliance with the full extent of Pihl's scope of investigation as a sign of its good faith. Furthermore, Lexington highlights the deposition testimony of Truck's insurance-specialist attorney, who noted that "[i]f the insured chooses to have its expert involved then that's typically an expense born by the insured." Hight Dep. p. 32 lns. 20–25.

In its response, Dally has argued at length that it is possible for an insurance company to act in bad faith even if its initial decision to deny benefits turns out to have been the correct decision after more considered evaluation. The Court notes that the inverse is true, as well: That an insurance company's good faith decision to deny benefits might ultimately be determined to have been wrong. In short, the success of a breach of insurance claim is not dispositive of a claim for bad faith claims handling. See Coventry, 136 Wn.2d at 269. Setting aside considerations of the outcome of the breach of contract action, it is clear that Lexington's decision to deny benefits was well-considered and arrived at in good faith.

### III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that Lexington's motion for summary judgment (Dkt. # 76) is DENIED as to Dally's breach of contract claim and GRANTED as to Dally's bad faith claims handling and Washington Consumer Protection Act claims.

DATED this 5th day of April, 2006.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER ON LEXINGTON'S MOTION
FOR SUMMARY JUDGMENT - 7